IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 25-cv-01485-PAB-STV

STEPHANIE M. CARROLL, and
ATOMIC WORKERS ADVOCACY, INC.,

Plaintiffs,

v.

UNITED STATES DEPARTMENT OF LABOR, and
RACHEL D. POND,

Defendants.

---

**ORDER**

---

This matter comes before the Court on the Motion to Dismiss Under Rule 12(b)(1) and (b)(6) [Docket No. 40]. Plaintiffs filed a response, Docket No. 41, and defendants filed a reply. Docket No. 43.

## I. BACKGROUND[1]

In 2000, Congress passed the Energy Employees Occupational Illness Compensation Program Act ("EEOICPA"), which allows workers in the energy sector who are exposed to harmful substances to file claims for compensation and medical benefits. 42 U.S.C. § 7384 *et seq.* A claimant may, but is not required to, appoint an individual to represent his or her interests when filing a claim. 20 C.F.R. § 30.600(a). Plaintiff Stephanie M. Carroll has acted as a non-attorney representative for EEOICPA

---

[1] The facts below are taken from plaintiffs' amended complaint, Docket No. 31, and are presumed to be true, unless otherwise noted, for purposes of ruling on defendants' motion to dismiss.

claimants since March 2004. Docket No. 31 at 3, ¶ 10. On January 25, 2016, Ms. Carroll formed Atomic Worker Advocacy, Inc. ("Atomic") to assist her in advocating for claimants. *Id.*, ¶ 11.

On or about May 22, 2024, Rachel Pond—the Director of the Energy Employees Occupational Illness Compensation Program—wrote a letter to Ms. Carroll[2] regarding alleged reports concerning the manner Ms. Carroll communicated with Division of Energy Employees Occupational Illness Compensation ("DEEOIC") Recourse Center ("RC") employees, the District Office ("DO"), and Final Adjudication Branch ("FAB") staff members (collectively, "agency staff") and accuses plaintiff of bullying and threatening behavior as well as having a disrespectful demeanor. *Id.* at 7, ¶¶ 29-30. Ms. Pond stated that "I have decided it is no longer appropriate for you to communicate with the DEEOIC DOs, FAB, or DEEOIC RCs by telephone. Future communications will be in written form."[3] *Id.*, ¶ 31. Ms. Pond also sent copies of this letter to senior management of the contractor that operates multiple DEEOIC RCs. *Id.*, ¶ 32.

The day after the May 22, 2024 letter was written, Ms. Carroll was representing a claimant in a hearing. *Id.*, ¶ 33. The FAB hearing officer did not permit Ms. Carroll to

---

[2] The complaint alleges that this letter was written to "plaintiff," but does not specify whether plaintiff refers to Ms. Carroll or Atomic. Docket No. 31 at 7, ¶ 29. In fact, throughout the complaint, most references are to "plaintiff" rather than "plaintiffs," without specifying which plaintiff is being referenced. *See generally id.* However, "plaintiff" appears to refer to Ms. Carroll rather than Atomic. *See id.* at 3, ¶ 11 ("Plaintiff formed Atomic Worker Advocacy, Inc.").

[3] Plaintiffs allege that Ms. Carroll did not receive this letter until May 28, 2025. Docket No. 31 at 7, ¶ 29. The Court presumes this is a typographical error, and that plaintiffs meant to write May 28, 2024. This is evidenced by the fact that, on May 31, 2024, Ms. Carroll allegedly called the DEEOIC RC regarding the May 22, 2024 letter. *Id.* at 9, ¶ 39. This would make little sense if Ms. Carroll had not yet received the May 22, 2024 letter.

testify and ordered her to stop objecting. *Id.* Instead, the FAB hearing officer asked Ms. Carroll to produce the claimant's exhibits, evidence, and arguments in an orderly manner. *Id.* At a December 19, 2025 hearing, the FAB hearing officer berated plaintiff about her objections. *Id.* at 9, ¶ 42. Ms. Carroll has been sanctioned for making objections during hearings, *id.* at 10, ¶ 46, and her objections are consistently disregarded. *Id.* at 12, ¶ 55.

Ms. Carroll's inquiries to the Office of Workers' Compensation Programs ("OWCP") often go unanswered. *Id.* at 10-11, ¶¶ 45, 49-50. Moreover, the OWCP censored Ms. Carroll during a public webinar. *Id.* at 10, ¶ 47. The agency[4] has failed to update the personal information of the claimants that Ms. Carroll and Atomic represent. *Id.* at 11, ¶ 53. In January 2025, a final decision was issued in one of Ms. Carroll's cases without a hearing being conducted. *Id.* at 12, ¶ 58. Plaintiffs allege that the majority of this conduct occurred "as a result of the May 22, 2024, Ban." *See, e.g., id.* at 9-12, ¶¶ 42, 49, 50, 53, 55.

On May 12, 2025, plaintiffs filed a complaint against the Department of Labor and Ms. Pond. Docket No. 1. On July 30, 2025, the case was stayed pending plaintiffs' counsel's suspension from the practice of law. Docket Nos. 17, 18. On December 22, 2025, the stay was lifted, Docket No. 32, and plaintiffs filed an amended complaint. Docket No. 31. The amended complaint brings a claim to "set aside the May 22, 2024, Directive," claiming that it violates the Fifth and First Amendments by restricting plaintiffs' rights to represent claimants. Docket No. 31 at 13. Plaintiffs also bring a

---

[4] Plaintiffs state that "the agency" failed to update this information, but does not state which agency they are referring to. Docket No. 31 at 11, ¶ 53.

claim labeled "Declaratory Judgment," asking the Court to declare that the May 22, 2024 restriction is unconstitutional,[5] and a claim for violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq*. *Id.* at 15-17, ¶¶ 75-88. On January 20, 2026, defendants filed a motion to dismiss, arguing that plaintiffs lack standing to bring their claims and, in the alternative, that plaintiffs did not state a claim for relief. Docket No. 40. On February 3, 2026, plaintiffs filed a response, Docket No. 41, and on February 17, 2026, defendants filed a reply. Docket No. 43.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) allows a party to move to dismiss a claim for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A dismissal under Rule 12(b)(1) is not a judgment on the merits; rather, it is a determination that the court lacks jurisdiction to adjudicate the claim. *Creek Red Nation, LLC v. Jeffco Midget Football Ass'n., Inc.*, 175 F. Supp. 3d 1290, 1293 (D. Colo. 2016). A court lacking jurisdiction "must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Caballero v. Fuerzas Armadas Revolucionarias de Colombia*, 945 F.3d 1270, 1273 (10th Cir. 2019) (citation omitted). Such a dismissal is without prejudice. *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir. 2006).

Challenges to subject matter jurisdiction may take two forms—a facial attack or a factual attack—each with distinct analytical frameworks. *United States v. Rodriguez-Aguirre*, 264 F.3d 1195, 1203 (10th Cir. 2001). A facial challenge focuses on the sufficiency of the allegations in the complaint. *Id.* In resolving a facial challenge, "the

[5] The claim for declaratory judgment appears to be a request for a certain form of relief rather than an independent claim.

district court must accept the allegations in the complaint as true." *Id.* By contrast, a factual challenge allows a party to "go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends." *Id.* (citation omitted). In addressing a factual challenge to subject matter jurisdiction, "the court does not presume the truthfulness of the complaint's factual allegations." *Id.* (citation and quotations omitted); *see also Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001) ("a court's reference to evidence outside the pleadings does not convert the motion into a Rule 56 motion"). "A challenge to a plaintiff's standing to bring a particular claim is properly raised in a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction." *Creek Red Nation, LLC*, 175 F. Supp. 3d at 1293.

## III. ANALYSIS

Defendants raise a facial attack based on plaintiffs' failure to plausibly allege standing. Docket No. 40 at 5.

To establish Article III standing, a plaintiff must allege "that (1) he or she has suffered an injury in fact; (2) there is a causal connection between the injury and the conduct complained of; and (3) it is likely that the injury will be redressed by a favorable decision." *Ward v. Utah*, 321 F.3d 1263, 1266 (10th Cir. 2003) (quoting *Phelps v. Hamilton*, 122 F.3d 1309, 1326 (10th Cir. 1997)). "The plaintiff bears the burden of establishing standing." *Am. Petroleum Inst. v. United States Dep't of Interior*, 823 F. App'x 583, 586 (10th Cir. 2020) (unpublished) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). Plaintiffs identify two purported interests that were harmed by the May 22, 2024 letter: their interest in acting as a representative and the claimants' interest in being represented. Docket No. 41 at 6. The Court need not determine whether this purported harm constitutes an injury in fact because, even if it does, the

Court finds that plaintiffs have not sufficiently alleged that this harm was caused by defendants' conduct.

### A. Causation

In order to establish causation for purposes of standing, plaintiffs must show that their injury is "fairly traceable to the challenged action of the defendant." *Lujan*, 504 U.S. at 560 (citation and alterations omitted). "[T]he line of causation between the illegal conduct and injury—the links in the chain of causation . . .—must not be too speculative or too attenuated." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 383 (2024) (internal quotations and citations omitted). In the context of a motion to dismiss for lack of standing[,] . . . a conclusory allegation, representing no more than a speculative inference[,] . . . is not sufficient to demonstrate causation." *F.D.I.C. v. Dee*, 2015 WL 1004479, at *32 (D.N.M. Mar. 3, 2015) (citation and internal quotations omitted); *see also Ctr. for Biological Diversity v. Berger*, 785 F. Supp. 3d 894, 902 (D. Colo. 2025) (finding that the plaintiff's conclusory allegations regarding causation failed to establish standing).

Defendants argue that plaintiffs' allegations regarding causation are conclusory. Docket No. 40 at 7. Specifically, defendants claim that the amended complaint fails to provide any factual detail as to how the May 22, 2024 ban caused any harm to plaintiff, but instead simply states, in conclusory fashion, that the harm occurred "as a result of the May 22, 2024, Ban." *Id.* For example, plaintiffs allege that,

> On or about December 19, 2025, during a Hearing, Plaintiff was subjected to further unprofessional and unconstitutional treatment as the Hearing Officer purposefully went off the record in order to berate the Plaintiff concerning her objections which she was entitled to make; Plaintiff in response states, "my objections are not significant just to the outcome of the claim but it is also to the adjudication of the claim and every claimant deserves due process and deserves a hearing that is non adversarial and

> no decisions have been made prior to the hearing. I object to the fact that I feel this hearing is adversarial. All of the objections are significant to the adjudication of the claim and to the outcome of the claim . . .;" all as a result of the May 22, 2024 Ban.

Docket No. 31 at 9, ¶ 42. The Court agrees with defendants that this paragraph does not explain how the May 22, 2024 letter, which banned Ms. Carroll from making telephone calls, caused a hearing officer to reprimand Ms. Carroll for making objections during the December 19, 2025 hearing. Plaintiffs' other allegations suffer from the same deficiency. For example, plaintiffs do not explain how the May 22, 2024 letter caused the agency to have inaccurate personal information for the claimants that plaintiffs represent, *id.* at 11, ¶ 53, or how it caused plaintiffs' emails to not be answered in a timely fashion. *Id.* at 10, ¶ 49. Instead, plaintiffs merely allege that these actions occurred "as a result of the May 22, 2024, Ban." *Id.* at 10-11, ¶¶ 49-53.

In response to defendants' argument that plaintiffs' allegations are conclusory, plaintiffs state that,

> With all due respect to Defendants, Plaintiff has demonstrated facts showing a "casual [sic] connection between injury and "conduct complained of" [MTD, p.7]. Confusingly, Defendants assert that various paragraphs in Plaintiffs['] complaint do not make non-conclusionary allegations [MTD, p.7, citing ECF 31, ¶¶42, 49, 50-54, 56, 57]. Contrary to Plaintiffs' claim, Plaintiffs have experienced misconduct by hearing officers from the ban [ECF 31, ⁋⁋ 31; 39-42; 45; 47; 53-54; 56; and 61]. Plaintiffs' complaint has met the causation criteria.

Docket No. 41 at 7. The Court agrees with defendants that plaintiffs' allegations are conclusory because they do not explain how defendants' alleged misconduct was caused by the May 22, 2024 letter—the asserted "injury in fact" in this case. Plaintiffs' argument to the contrary is similarly conclusory; it merely asserts that the complaint "has met the causation criteria" without explaining how. *Id.* As stated above, such a

deficiency is fatal to plaintiff's claims because conclusory allegations are insufficient to demonstrate causation. *F.D.I.C.*, 2015 WL 1004479, at *32; *Ctr. for Biological Diversity*, 785 F. Supp. 3d at 902. Therefore, plaintiffs have failed to establish causation and do not have standing to bring this case.

**B. <u>Redressability</u>**

Finally, plaintiffs fail to establish that a favorable judgment would redress their injuries. Plaintiffs' requested relief is to have the May 22, 2024 letter set aside and to have the Court declare that the letter is unlawful. Plaintiffs do not explain how setting aside the May 22, 2024 letter would change how they are treated during hearings, or how it would redress any other conduct alleged in the complaint. Docket No. 41 at 7. Instead, plaintiffs merely state that, "[p]lainly, Plaintiffs' injuries establish redressed [sic] by a favorable decision." *Id.* However, "it must be likely, not merely speculative, that a favorable judgment will redress the plaintiff's injur[ies]." *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1154 (10th Cir. 2005) (citation omitted). Plaintiffs' bare assertion that their injuries would be cured by setting aside the May 22, 2024 letter is speculative and does not establish redressability. Accordingly, the Court will grant the motion to dismiss on the basis that plaintiffs have failed to establish standing.[6] The Court will leave the case open for three weeks to give plaintiffs an opportunity to file a motion to amend their complaint in order to cure the defects listed in this order.

**IV. CONCLUSION**

Therefore, it is

---

[6] Because the Court will grant the motion to dismiss on the basis of standing, it will not reach defendants' arguments that plaintiffs failed to state a claim.

**ORDERED** that the Motion to Dismiss under Rule 12(b)(1) and (b)(6) is **GRANTED**. It is further

**ORDERED** that plaintiffs' claims for relief are **DISMISSED without prejudice**. It is further

**ORDERED** that plaintiffs may file a motion for leave to amend the complaint on or before **September 8, 2026**.

DATED August 18, 2026.

BY THE COURT:

PHILIP A. BRIMMER
United States District Judge